**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**NOVEMBER 17, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL F. CRONIN, | ) | No. 37939-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | **ORDER GRANTING** |
| v. | ) | **MOTION TO PUBLISH AND** |
| | ) | **MOTION FOR EXTENSION** |
| CENTRAL VALLEY SCHOOL DISTRICT, | ) | **OF TIME** |
| | ) | |
| Respondent. | ) | |

THE COURT has considered respondent's motion to publish the court's opinion filed on August 25, 2022, and is of the opinion the motion to publish should be granted. Therefore,

IT IS ORDERED the motion to publish is granted. The opinion filed by the court on August 25, 2022, shall be modified on page 1 to designate it is a published opinion and on page 73 by deletion of the following language:

> A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

IT IS FURTHER ORDERED that pursuant to RAP 18.8(a), the respondent's motion for extension of time to file the motion to publish is granted.

PANEL:    Judges Staab, Pennell, and Fearing

FOR THE COURT:

_____
LAUREL SIDDOWAY
CHIEF JUDGE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL F. CRONIN, | ) | |
| | ) | No. 37939-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CENTRAL VALLEY SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Michael Cronin was a teacher with the Central Valley School District (District) from 2005 to 2012. In January 2012, the District issued a notice of probable cause for discharge and nonrenewal of Cronin's employment based on six identified causes. Following a lengthy legal dispute over whether Cronin was entitled to a statutory hearing, the parties participated in a sufficient cause hearing that lasted more than 12 days. The hearing officer found that the District proved four of the identified causes by a preponderance of the evidence and concluded that sufficient cause existed for Cronin's nonrenewal and discharge. Cronin appealed to the Spokane County Superior Court, which affirmed the hearing officer's decision.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

On appeal to this court Cronin raises six issues. He contends that he is entitled to entry of a judgment revising the hearing officer's decision and reinstatement because: (1) the notice of probable cause was vague and inadequate, allowing the hearing officer to rely on misconduct not specified in the notice, (2) the District presented evidence it did not have at the time it issued the probable cause notice, (3) the hearing officer violated the appearance of fairness doctrine, (4) the evidence does not support the finding that the statement of the student known as S.M. corroborated the deposition testimony of the student known as H.Z., (5) the hearing officer committed an error of law by ruling that the allegations set forth in the parties' 2010 Settlement Agreement were verities and could not be relitigated, and (6) the hearing officer erred by determining there was sufficient cause for termination where there was no nexus between Cronin's off-duty alcohol-related conduct and his teaching effectiveness. Cronin also argues he is entitled to an award of attorney fees.

We reject Cronin's arguments on appeal and affirm the hearing officer's conclusion that sufficient cause existed to discharge Cronin and not renew his contract.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

BACKGROUND

A. BACKGROUND FACTS[1]

At the sufficient cause hearing, the District alleged that Cronin's off-duty conduct and his on-campus conduct justified termination and nonrenewal. Between 2004 and 2011, Cronin was arrested five times on alcohol-related charges. He was charged four times with driving under the influence of alcohol and/or drugs (DUI) and physical control of a vehicle while under the influence of alcohol and/or drugs. He was also charged with obstructing an officer and resisting arrest with allegations that he was under the influence of alcohol at the time of the arrest. The District also produced evidence that restraining orders had been issued against Cronin during this time and that he had been banned from a local bakery for inappropriate language and requests. The allegations about his on-campus conduct include working while intoxicated, harassing staff members, and inappropriately touching students. We set forth the allegations in chronological order.

*February 19, 2004 arrest for DUI*

Cronin's first documented contact with law enforcement was on February 19, 2004. Cronin was pulled over for speeding and eventually arrested for DUI. His blood-alcohol content was 0.145 and 0.158. At the time of this arrest, Cronin was working as a

---

[1] Cronin assigns error to two of the hearing officer's 119 findings of fact. The rest of the findings are therefore verities on appeal. *See, e.g.*, *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.2d 147 (2004). The facts are taken from the hearing officer's findings unless noted otherwise.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

teacher for Spokane Public Schools.  Several weeks after pleading guilty to a reduced

charge of negligent driving, Cronin submitted his application for employment with the

District.  He did not disclose the conviction on his application but did disclose it

on a subsequent disclosure form.  The hearing officer found that Cronin did not

intentionally misrepresent the arrest in order to obtain employment.  The hearing officer

did find that during his deposition, Cronin "refused to admit that he was driving under the

influence . . . .  Instead, Cronin asserted legalistic hair-splitting arguments to support his

opinion that he was not under the influence of alcohol."  Clerk's Papers (CP) at 3

(Finding of Fact (FF) 11).  While this arrest and conviction occurred before Cronin began

working for the District, the hearing officer found that the conduct was relevant as part of

a pattern of alcohol-related arrests and other legal issues in which "Cronin continued to

deny responsibility for his decisions and he failed to acknowledge that his conduct

impacted his employment with the School District and his relationship with other

teachers, parents, and students."  CP at 3 (FF 9).

     *December 2, 2007 arrest for DUI*

     On December 2, 2007, Cronin was arrested for his second DUI.  The hearing

officer found that Cronin hit a parked car while under the influence of alcohol and left the

scene.  After a witness contacted law enforcement, Cronin was stopped approximately

three miles from the accident.  Cronin told the officer that he hit a car when it pulled out

4

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

in front of him and the other driver left the scene after providing a driver's license.  After

observing signs of intoxication, Cronin was arrested for DUI.

After his arrest, Cronin was argumentative and threatening.  Cronin asked Deputy

Scott Bonney whether he had children in school, stated he had once been a prosecutor for

Spokane County, threatened to sue Deputy Bonney, and asked if there was anything he

could do to get out of a DUI.  Testing of his blood returned an alcohol content of 0.166.

In his response to prehearing discovery, Cronin described his actions: "the road

was icy and I slid into a parked, unattended car on a narrow street."  CP at 4 (FF 20).

However, the hearing officer found that Deputy Bonney credibly testified that the roads

were not icy on that day and the road was not a narrow street.  During his deposition and

at the hearing, Cronin admitted he was under the influence of alcohol but would not

admit that his blood-alcohol content was over the legal limit.  The hearing officer found

that Cronin "refuses to acknowledge his alcohol problem, fails to accept responsibility for

his conduct, and he continues to provide excuses."  CP at 5 (FF 24).

*April 2, 2008 arrest for DUI*

Four months later, and while the 2007 charges were still pending, Cronin was

arrested for his third DUI.  Washington State Patrol Trooper Antonio Olivas testified that

he observed Cronin's vehicle stopped in the middle of an intersection and then saw the

car weave as it drove away.  Following laboratory testing, Cronin was charged with

driving under the influence of Ambien, a prescription drug.  Cronin characterized his

5

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

offense as turning left when the intersection was signed for no left turn. The hearing

officer found this explanation to be part of a continuing pattern by Cronin of attempting

to mischaracterize his criminal charges, driving circumstances, and culpability.

On April 9, 2008, Cronin resolved his 2007 and 2008 charges for DUI. He

pleaded guilty to a reduced charge of first degree negligent driving for the 2008 DUI and

entered a deferred prosecution on the 2007 DUI, agreeing to abide by conditions

including that he not commit any alcohol and/or drug related offenses during the period

of deferral.[2] Cronin did not advise the District of these new charges, and Jay Rowell,

assistant superintendent for the District, did not learn about either the December 2007 or

the April 2008 arrest until an article discussing the arrests was published in the

*Spokesman-Review* in 2009. Rowell learned the full details of these arrests in October

2011 when he reviewed a file on Cronin from the Office of Professional Practices (OPP).

*Harassing conduct directed at Hardenbrook*

On November 20, 2008, Cronin took one of his classes on a field trip. Sara

Hardenbrook, a school bus driver employed by the District, drove the class there. When

she dropped off the class, she gave Cronin her cell phone number so he could call her

---

[2] In his written findings, the hearing officer found that Cronin "received a deferred prosecution for this incident and fulfilled all of the obligations of his deferred prosecution." CP at 5 (FF 22). This finding conflicts with the hearing officer's memorandum opinion in which he notes that the deferred prosecution was eventually revoked and Cronin was convicted and sentenced on the DUI. Neither party challenges this finding. The inconsistency does not impact our analysis and we make note of it for accuracy purposes only.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

when the class was ready to be picked up. When she returned to pick up the class, Cronin asked about her marital status, whether she was happily married, and invited her to join him and his friends for drinks. Cronin stood very close to her during this conversation, and Hardenbrook felt he was flirting with her.

After dropping the class off, Hardenbrook drove the bus back to the garage. She noticed several missed phone calls and text messages from Cronin at this time. Hardenbrook felt uncomfortable and texted Cronin to stop calling her. He called at least one more time after she asked him to stop. Hardenbrook filed a harassment complaint with the District, and the principal of University High School, Daryl Hart, gave Cronin a verbal reprimand and told him to stop calling Hardenbrook. Cronin had no further contact with Hardenbrook.

*Allegations of misconduct in fall of 2008*

On January 29, 2009, the District placed Cronin on administrative leave to investigate an allegation that on October 17, 2008, Cronin inappropriately touched student J.S. by rubbing her stomach and came to school under the influence of alcohol. During the investigation, the District interviewed J.S. and student J.B., who witnessed the touching incident. The District also interviewed several students in Cronin's transition assistance program (TAP) class who raised the allegation that Cronin may have been intoxicated during class.

7

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

During the investigation, the District learned of another incident involving Cronin that also occurred on October 17, 2008. Jan Pierce, who worked as a secretary at University High School, alleged that Cronin inappropriately touched her. Rowell interviewed Pierce as part of his investigation. Pierce alleged that Cronin came to her desk, put his head on her shoulder, and placed his hand on her upper inner thigh. Pierce pushed him away and informed the administration of the incident.

Shanda Shepherd, owner of the Rocket Market in Spokane and a parent of former University High School students, also came forward with complaints about Cronin, who was a customer at her store. Rowell interviewed Shepherd as part of his 2009 investigation. According to Shepherd, Cronin would show up to the store after he had been drinking and ask Shepherd to pour alcohol into a Coke cup to hide his drinking from students and parents, a request Shepherd denied as illegal. Cronin again asked for his alcohol to be poured into a Coke cup and, after he was refused, did so himself. He also harassed customers. Eventually, Shepherd had to "'ban'" Cronin from Rocket Market. CP at 8 (FF 44). Shepherd later testified that following these incidents, she asked the school to remove Cronin from the senior project board at University High School that would grade her daughter's senior project.

On February 11, 2009, Cronin had a notice and opportunity meeting with the District to discuss the ongoing investigation.

8

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

That same day, Cronin's ex-girlfriend filed her second petition for a restraining order against Cronin. She filed her first petition in July 2008 because Cronin was calling her 30 to 100 times per day on weekends, holidays, and vacations, and made a threatening comment regarding her new relationship. After their relationship improved, she revoked her petition because she did not want to hurt Cronin in his employment. However, he began harassing her in late January 2009 when she was in the hospital, leading to the second petition for a restraining order.

*Written Reprimand*

On May 12, 2009, the District issued a letter of reprimand (Written Reprimand) to Cronin. The Written Reprimand indicated that it was addressing the allegations of inappropriate touching of J.S., and directed him to "(1) refrain from any physical contact with all students at all times; and (2) communicate in a professional and respectful manner with all students at all times." Appellant's Ex. 7. The 2009 Written Reprimand warned that, "failure to adhere to above directives will be considered insubordination and lead to further disciplinary action up to and including dismissal." Appellant's Ex. 7.

At the time the District issued the 2009 Written Reprimand, the District decided to deal with the allegations regarding Cronin's alcohol-related misconduct by supporting him in alcohol treatment. He was receiving outpatient treatment at Colonial Clinic when he received the 2009 Written Reprimand, and the District placed him on administrative leave. Based on discussions Rowell had with Cronin's union representative, Sally

9

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

McNair, the District wanted to enter into a return-to-work agreement with Cronin to address his alcohol-related issues when he returned from the 2009-2010 school year. Rowell and McNair began negotiating such an agreement at the beginning of the school year in 2009, but eventually McNair informed Rowell that Cronin would not be entering into any return-to-work agreement.

*First two* Spokesman-Review *articles*

The following fall, on September 23, 2009, the *Spokesman-Review* published an article about Cronin titled "Teacher back after rebuke for behavior."  Resp't's Ex. 21. The article discussed allegations that Cronin came to school under the influence of alcohol, inappropriately touched Pierce and student J.S., and that Cronin received a Written Reprimand.  The article also mentioned the April 2008 DUI charge amended to first degree negligent driving.  The article was the first time the District became aware of this criminal charge.  After the article was published, the District received complaints from community members about Cronin's return to the classroom.

On October 17, 2009, the *Spokesman-Review* published another article about Cronin titled "Teacher has legal woes," reporting that Cronin had been charged with driving under the influence three times since 2004 and that he had multiple restraining orders entered against him, with one as recent as February 2009.  Resp't's Ex. 23.  This was the first time the District became aware that Cronin had a protection order against him.  The article also rehashed the allegations that led to the Written Reprimand, adding

10

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

the allegation that Cronin was banned from the Rocket Market due to his drinking and harassment of staff and customers.

*Events leading up to Settlement Agreement*

On October 21, 2009, Rowell met with Cronin to discuss the allegations regarding Cronin coming to school under the influence, Cronin's legal issues outside of school that he failed to disclose to the District, and questions regarding his truthfulness in his employment application. On November 17, Cronin filed a grievance against the District, claiming the District was attempting to discipline him again for the allegations that arose during the 2008-2009 school year. The District responded to the grievance, indicating the Written Reprimand from May 2009 only addressed the allegations of touching student J.S., not the alcohol-related conduct, and the District believed the alcohol-related issues were going to be addressed through Cronin's alcohol treatment and a return-to-work agreement. The District suggested the parties enter into a settlement agreement under which the District would agree that the Written Reprimand provided discipline both for inappropriately touching a student and the issues regarding Cronin's alcohol-related conduct if he agreed to withdraw his grievance.

In January 2010, the District, Central Valley Education Association, and Cronin signed a "Settlement Agreement," agreeing that the 2009 Written Reprimand acted as

11

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

discipline for both Cronin inappropriately touching student J.S. and the allegation that he was under the influence at school.[3]  Appellant's Ex. 11.

*Fourth DUI charge (physical control)*

On August 4, 2010, at around 1:40 a.m., Spokane police received a report that a Jeep Wrangler was parked in the middle of a road in Spokane.  Officer Scott Haney found Cronin standing by the passenger side of the vehicle.  The vehicle's doors were open, the keys were in the ignition, the headlights were on, and the driver's seat was positioned in a manner that fit Cronin.  The officer observed that Cronin appeared to be under the influence.  Cronin resisted arrest and was arrested for physical control of a motor vehicle while under the influence of alcohol after refusing to submit to a blood test.

At the sufficient cause hearing, Cronin produced evidence that his friend, Teresa Anderson, had been driving the Jeep.  Anderson and Cronin offered inconsistent stories for how the Jeep ended up parked in the intersection, who was driving, and why they were out driving.  The hearing officer found that neither Anderson nor Cronin were credible as to the incident.

---

[3] The hearing officer also found that under the Settlement Agreement, the 2009 Written Reprimand acted as discipline for the "'other issues'" raised to that point, including the Jan Pierce incident, allegations of use of alcohol by TAP students, the Sara Hardenbrook matter, and the Rocket Market incidents.  CP at 11 (FF 63).  Cronin did not assign error to this finding.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Allegations of touching student H.Z.*

In fall 2010, Cronin reportedly touched a female student, H.Z., in an inappropriate manner. According to H.Z., while she was a student in one of his accounting classes, Cronin asked her if her foster father had ever been inappropriate with her. The question made H.Z. feel very uncomfortable. H.Z. alleged that Cronin also rubbed her arm and back on two separate occasions, stroked her feet with his feet, and would stand a few inches behind her so that his crotch would have been in her face had she turned around. According to H.Z., Cronin touched other female students besides her and treated girls differently than the boys, interacting more with the girls, touching them, and standing closer to them. In her deposition, H.Z. testified that Cronin's behavior was "'weird,'" and "'inappropriate,'" and that she would have been uncomfortable seeking out Cronin after class to answer any questions about the course. CP at 14 (FF 78).

During the spring semester of the 2010-2011 school year, H.Z. had two encounters with Cronin when she was no longer in his class. In the first encounter, she was walking down the hall in front of Cronin's classroom when he saw her and came outside to get her attention. H.Z. did not respond and kept walking. The next day, Cronin caught up to H.Z. when she was walking to lunch and asked her why she had been rude the previous day. She responded that she did not have to say "'hi'" to him, and he replied, "'Well, good luck with that,'" before walking away. CP at 15 (FF 82).

13

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Following these incidents, H.Z. and her mother came to University High School to speak with an administrator. According to H.Z., this occurred sometime in spring 2011. She initially spoke to Sherry Clark, the assistant principal at that time. At the beginning of the meeting, H.Z. or her mother told Clark about how Cronin had touched H.Z. and made her feel uncomfortable. At that point, Clark stopped the meeting so she could involve the principal, Daryl Hart, because Clark did not supervise or evaluate Cronin. When Hart joined the meeting, neither he nor Clark asked H.Z. to repeat what she had already told Clark, but they instead asked her to continue her story. Accordingly, Hart did not hear about the incidents of inappropriate touching but only heard about the hallway encounters. After the meeting, Hart told Cronin not to have any more contact with H.Z.

H.Z.'s report about the inappropriate touching was not reported to the District. Assistant Superintendent Rowell found out about the allegations the following year when the *Spokesman-Review* published an article about H.Z.'s allegations, and H.Z.'s mother contacted the District to report how upset she was with the handling of her daughter's complaint.

*Arrest for obstructing and resisting arrest*

On August 29, 2011, the Pend Oreille County Sheriff's Office responded to a report of a vehicle driving erratically on Highway 2. The responding deputies found Cronin in the passenger seat and his friend Nanci Stocker in the driver's seat. When

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Cronin exited the vehicle, stumbling in the process, one of the responding deputies noticed a strong odor of alcohol coming from the vehicle. As the officers attempted to investigate the driver's intoxication, Cronin violated multiple requests by the officers to not interfere. After telling the officers that Stocker had suffered a traumatic brain injury that might affect her ability to perform field sobriety tests and that he would be acting as Stocker's attorney, Cronin continued to interfere with statements such as "'Nanci, do not say a fucking thing!'" and "'Nanci, do not do anything. Fuck them.'" CP at 17 (FF 91, 92). After the deputies advised Cronin he was under arrest for obstruction, Cronin jumped into the vehicle and attempted to evade being handcuffed. Following his arrest, Cronin made several comments to law enforcement, including, "'You will get yours,'" "'I bet your mother is proud of you,'" and "'I will own your job.'" CP at 17 (FF 95).

The District learned about Cronin's arrest that same day and placed him on paid administrative leave. Rowell notified Cronin of his leave status by letter. The letter stated the District would be investigating a number of arrests and issues that "demonstrate a disregard of generally accepted professional standards." Appellant's Ex. 19. The letter also gave specific directives for Cronin to follow on leave and stated that Cronin would be given notice "of specific allegations and an opportunity to respond to them." Appellant's Ex. 19.

15

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Resolution of physical control charge*

On September 29, 2011, Cronin pleaded guilty to physical control of a motor vehicle while under the influence of alcohol for the incident from August 2010. He was sentenced to 364 days in jail with 94 days suspended, 150 days of electronic home monitoring, and a 120-day mandatory minimum jail sentence. As part of his probation, Cronin was required to enroll in treatment. The judge acknowledged that Cronin was scheduled to begin in-patient treatment the next day and ordered him to check into jail within 24 hours of leaving the treatment facility.

*Events leading up to discharge*

In October 2011, Assistant Superintendent Rowell requested and obtained investigative records on Cronin kept by the OPP. The OPP file included police reports, law enforcement records, court records pertaining to Cronin's 2004, 2007, 2008, and 2010 arrests, and court records on the protection orders obtained by Cronin's ex-girlfriend. The file also included notes from various interviews, including interviews with student J.S. about inappropriate touching, interviews with students about Cronin being under the influence at school, and interviews with the school's secretary, Pierce, and Shepherd, the owner of Rocket Market. The file also contained the harassment complaint filed by Hardenbrook and notes from an interview OPP had with Cronin in May 2010.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

On October 8, 2011, while Cronin was in treatment, the *Spokesman-Review* published the first article in the second series of articles discussing Cronin's legal issues and arrests, titled "U-Hi teacher to be jailed." Resp't's Ex. 42. The article noted that Cronin was sentenced to serve nearly one year in jail and that additional charges from the August 2011 Pend Oreille County arrest were pending. Rowell testified that he relied on the information in this article in part for his "Notice of Probable Cause for Discharge and Nonrenewal" (Notice). Resp't's Ex. 64.

On October 13, Cronin's friend, Teresa Anderson, phoned Rowell and said that Cronin was in treatment. She claimed that the newspaper article published on October 8 was inaccurate and that Cronin would not be confined to a correctional facility. Rowell told Anderson he could not communicate about Cronin without a signed release. That same day, the *Spokesman-Review* published an article titled "U-Hi teacher receives jail term." Resp't's Ex. 45. The article rehashed the facts pertaining to Cronin's 2010 and 2011 arrests, as well as his prior arrests for alcohol-related misconduct.

Two days later, on October 15, the *Spokesman-Review* published another article titled "U-Hi student alleges Cronin touched her," discussing H.Z.'s allegations. Resp't's Ex. 47. H.Z. denied talking to the reporter and believed her mother was the source of the article. This was the first time the District became aware of the allegations that Cronin inappropriately touched H.Z. Although several attempts were made, the District was unable to set up an interview with H.Z., who was no longer attending classes on campus.

17

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

On October 28, Cronin was required to report to jail. That same day, Cronin's friend Anderson e-mailed Rowell and represented that Cronin had completed inpatient treatment and would be going to Colonial Clinic for further treatment. She did not address the judgment and sentence requirement that Cronin report to jail.

On November 4, Rowell performed an internet search and learned that Cronin was an inmate at the Geiger Corrections Center. This was the first time Rowell learned that Cronin was in jail. A few days later, Rowell sent a letter to Cronin notifying him that he had not been able to reach him by phone because his phone had been disconnected and that Cronin was absent without leave because of his failure to communicate with the District.

*Notice of Probable Cause for Nonrenewal and Discharge*

Cronin and Rowell met on November 22 at the District office. Before the meeting, Rowell sent Cronin a letter outlining the allegations that he intended to discuss with Cronin at the meeting. These allegations included:

1. You have conducted yourself in a manner unbecoming of a teacher employed by Central Valley School District;

2. You have engaged in a pattern of misconduct that includes alcohol or substance abuse related incidents and boundary invasion incidents (at least one of which resulted in your incarceration);

3. Your pattern of behavior reflects negatively on your ability to perform your job and has a substantial negative impact on your ability to do your job;

4. You have not been available for work;

18

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

    5.  You continue to be unavailable for work;

    6.  You have not been forthcoming with the District regarding behavior that is job-related and that substantially negatively impacts your ability to do your job;

    7.  You have not been forthcoming with the District regarding your availability for work.

Resp't's Ex. 56.

Rowell's meeting notes indicate that he met with Cronin and Cronin's union representative, McNair, and Director of Human Resources Neva Ringwald. The notes indicate that they discussed each of the identified allegations point by point and that Cronin was given a chance to respond and ask questions.

Following the November 22 meeting, Rowell spoke with Superintendent Ben Small and recommended discharging Cronin. Small agreed. Rowell testified that when making the recommendation of probable cause for discharge, he considered "everything that we dealt with previously in the 2009 issue, things that I had discovered through the course of 2011, including massive records that I had from OPP, the different instance[s] of the DUIs, the details of those, as well as harassment issues with other females." Report of Proceedings (RP) at 85-86. Rowell indicated that he also considered the newspaper articles, but he believed the most significant allegation was the one made by H.Z.

19

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Rowell set up another meeting with Cronin on December 9, 2011, to let him know the District had decided to recommend discharge. He also gave Cronin some time to decide whether he wanted to resign in lieu of discharge. On December 15, Cronin stated he would not be resigning.

On January 5, 2012, Rowell issued a "Notice of Probable Cause for Discharge and Nonrenewal" (Notice). Resp't's Ex. 64. The Notice identified six grounds for nonrenewal and discharge almost identical to the grounds set forth in Rowell's November letter to Cronin.

> 1. You have conducted yourself in a manner unbecoming of a teacher employed by Central Valley School District;
>
> 2. You have engaged in a pattern of misconduct that includes several alcohol or substance abuse related incidents (at least one of which resulted in your incarceration and other which resulted in your inappropriate and exploitive conduct toward students and others);
>
> 3. Your pattern of behavior and the notoriety of your behavior reflects negatively on your ability to perform your job and has a substantial negative impact on your ability to do your job;
>
> 4. You have not been available for work and failed to notify the District of that fact;
>
> 5. You continue to be unavailable for work;
>
> 6. You have not been forthcoming with the District regarding your behavior that is job-related and that substantially negatively impacts your ability to do your job.

Resp't's Ex. 64.

20

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Postnotice procedure*

Following issuance of the Notice, a lengthy legal battle ensued between Cronin

and the District regarding whether he complied with the statutory requirement for

requesting a sufficient cause hearing.  Over the course of numerous motions and three

appeals, this court determined that Cronin's request for a hearing was timely and

complied with the statutory requirements and ordered the trial court to enter an order

compelling the District to participate in the statutory hearing process.[4]  Following a failed

attempt to seek review by the Supreme Court, the District engaged in the statutory

hearing process with Cronin.

*Sufficient Cause Hearing*

The hearing officer was an attorney agreed to by the parties.  The parties

conducted extensive discovery before the hearing according to RCW 28A.405.310(6),

including written discovery and depositions, motion practice, motions in limine, and

letter decisions by the hearing officer regarding evidentiary disputes.  In the written

discovery, Cronin asked the District to state all facts on which the District based each of

its identified causes in the Notice.  The hearing took place in November and December

---

[4] *See Cronin v. Cent. Valley Sch. Dist.*, No. 31360-3-III (Wash. Ct. App. Mar. 13, 2014) (unpublished), www.courts.wa.gov/opinions/pdf/313603.unp.pdf; *Cronin v. Cent. Valley Sch. Dist.*, No. 33062-1-III (Wash. Ct. App. Apr. 14, 2016) (unpublished), www.courts.wa.gov/opinions/pdf/330621.unp.pdf; *Cronin v. Cent. Valley Sch. Dist.*, 12 Wn. App. 2d 99, 456 P.3d 843, *review denied*, 195 Wn.2d 1030, 468 P.3d 617 (2020).

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*


2018 and lasted more than 12 days. The District presented testimony from more than 30 witnesses.

(a) <u>Comments relevant to the appearance of fairness issue</u>

During the hearing, the District called Shanda Shepherd, the owner of the Rocket Market, as a witness. When asked to explain why she banned Cronin from the store, she stated Cronin called one of her employees a "faggot," and Cronin immediately objected on hearsay and relevancy grounds. RP at 771. The hearing officer agreed, stating, "Yeah, that's not going to come in." RP at 771. Despite this ruling, the District tried to interject the evidence again, asking the witness whether she ever learned about Cronin making disparaging comments to her workers. She responded, "One of my employees refused to sell him alcohol, and he called him a faggot." RP at 775. Cronin immediately moved to strike and in response to the District's argument that the evidence was admissible, the hearing officer stated:

> No, I don't think it is. But I guess here's where I'm coming to, guys: I get it, and I understand why you're offering it.
>     My oldest son is gay, so I don't appreciate the comment at all. And if he'd said it in front of me he'd be sitting on his rear end with a fist in his face. And that's probably inappropriate for a lawyer too, but I would not have taken it kindly.
>     But, at the same time, I'd like to get this hearing done some time this century. And if we're going to bring up every single small thing and introduce it not through the person that heard it but through a second or third person, we're going to be here a long time.
>     . . . .

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

And I'm not saying anybody lied. I'm just saying, you know, we have Rules of Evidence for a reason. So for that reason, I'm going to exclude it.

And I'm not prejudging whether you did or didn't say it, sir. I'm just saying in my particular case it would have been offensive for lots of reasons, including how it might speak to my son, who I dearly love.

RP at 776-77.

Later in the hearing, the hearing officer allowed Cronin to deny using the homophobic slur even though the evidence of it had been excluded:

[Cronin's Attorney:] All right. There was discussion by Shanda Shepherd in her testimony, and you were asked about . . . disparaging comments by [the District's attorney]. Did you make disparaging comments about one of the employees being a faggot?

[Cronin:] No.

[District's Attorney]: I'm going to object. Asked and answered.

. . . .

[Hearing Officer]: Well, because it's not in the record, and he'd like it in the record. So I'm going to allow that.

[Cronin's Attorney]: And it was raised about disparaging remarks, so it's—

[Hearing Officer]: Yeah, so I'm going to allow it.

[By Cronin's Attorney:] Did you make such a comment?

[Cronin:] No, I don't use that word, and I have many reasons I don't use that word.

. . . .

. . . And that is a word I don't use. And just the implication that I would use the word faggot I sense as prejudicial to me.

RP 2349-50.

Later, in response to Cronin's testimony, the hearing officer stated:

Well, I'm going to do a full disclosure here. Because I got all huffy on the record when this came up the first time, and I mentioned my son as gay.

23

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

> I've used that word. Certainly not as a child, but as a teenager. And, hopefully, like many people, you grow up, you gain some understanding, you evolve—I think that's President Obama's term, evolve—and you understand how terms like that can be destructive.
>
> So whether you ever used it, did use it, didn't use it, I appreciate your explanation here and why you don't think you used it. But I got a little hot on the record, so I want to be fair, open and honest and not leave you guys hanging thinking "Well, [the hearing officer] has never used that word, and he got really offended." I have, stupidly, and understand now probably more than ever, thanks to my son, why that's inappropriate. Wouldn't use it again.

RP at 2350-51.

(b) Evidence relevant to challenged finding on H.Z.'s testimony

By stipulation, the District also presented a statement from student S.M., which the OPP obtained during its investigation into H.Z.'s allegations of inappropriate touching. The hearing officer later found that S.M.'s statement corroborated H.Z.'s testimony. Cronin assigns error to this finding.

In her statement, S.M. did not recall H.Z. being in the same accounting class. However, S.M. did witness Cronin rub students' arms or shoulders but in a "kinda of good to see you like rub your shoulder" rather than in a sexual manner. Resp't's Ex. 89. She never saw him rubbing feet but did see him "fake trip" over feet as a joke, that he would sometimes stand "just directly behind a student almost touching their back with his front," and that he "was a bit more social with girls." Resp't's Ex. 89. She stated that she did not hear other girls complain about Cronin rubbing shoulders/arms, but they did say he "would stand over their computer desks when they had low cut shirts." Resp't's

24

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Ex. 89. S.M. indicated that Cronin never engaged in this conduct with her, and she never witnessed him do it to other girls but that she had heard stories.

(c) Evidence on the *Hoagland*[5] factors

The District presented testimony from additional witnesses, including six of the law enforcement officials involved in Cronin's various alcohol-related arrests. The District also presented testimony from staff members Pierce and Hardenbrook and Cronin's ex-girlfriend.

Both the District and Cronin presented witness testimony regarding Cronin's ability to be a role model. Rowell testified that high school students are "[v]ery impressionable young people looking to their teachers and adults as role models and what they need to emulate" and that he considered the adverse impact Cronin's conduct could have on students in his position as a teacher and Distributive Education Clubs of America (DECA) advisor. RP at 318. He also stated that the District expects its teachers to be "excellent role models," and he did not know how Cronin could engage in these behaviors and still be a role model. RP at 348.

Robin Barnhart, an assistant principal at another high school in the District who had served as a DECA advisor, testified about the important role a DECA advisor serves in setting an example for their students. Barnhart testified that based on Cronin's history,

---

[5] *Hoagland v. Mount Vernon Sch. Dist. No. 320*, 95 Wn.2d 424, 429, 623 P.2d 1156 (1981).

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

including his various alcohol-related arrests, he could not be trusted to serve in that role or make the right decisions with students. Linda Thompson, a parent of two children who attended University High School in the past and an employee of the Greater Spokane Substance Abuse Council, testified that she felt teachers "need to hold strong ethics, strong integrity. They're teaching our children to grow up and live in society and obey the laws and live lives with integrity," and that someone with several DUIs is not someone who is obeying the law or who could serve as a good role model and educator. RP at 1205.

Rowell also testified that (1) he had to send out correspondence to school administrators regarding how to deal with questions about Cronin because staff reported concerns about parents and students asking questions following the publication of Cronin's arrest in August 2011, (2) parents expressed concerns to the District about bringing Cronin back to the classroom, (3) parents told the District they did not want Cronin teaching their children, (4) another teacher at the high school expressed concern to District administration about Cronin returning to school, and (5) Rowell could no longer trust Cronin given his repeated misconduct and his dishonesty, he had grave concerns about his return to the classroom, and would need to keep a close eye on him in the event he returned to teaching. According to Rowell, there was no written documentation memorializing the phone calls from parents regarding Cronin, but there were numerous calls. Shepherd and Thompson, both parents of former University High

26

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

School students, testified they would not want Cronin teaching their children or grandchildren based partly on his off-duty conduct. The District also elicited testimony from Trooper Jon McKee, Deputy Scott Bonney, Trooper Antonio Olivas, and Officer Matt McKay that as members of the law enforcement community, they would not want Cronin teaching their children based on his arrest record and how he conducted himself during the arrests.

Cronin presented several witnesses, including several individuals who were teachers with the District at the same time as Cronin. Collectively, these witnesses testified that Cronin was a good teacher and could be a good role model if he could overcome his alcohol issues and not have further incidents. Cronin testified that he could serve as a role model, despite his identified issues because "[t]he best role models are not perfect" and believes his experiences enhance his ability to relate to students on every issue. RP at 1943.

(d) Hearing officer's decision

The hearing officer issued an opinion concluding that the District had met its burden of proving sufficient cause to not renew Cronin's teaching contract and discharge him as of January 5, 2012. The hearing officer held that in deciding the matter, he considered "only the evidence discussed in the Findings of Fact and did not give any weight or consideration to events that occurred after January 5, 2012." CP at 1-2. The hearing officer found that the Notice was sufficient to apprise Cronin of the allegations

27

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

against him and that Cronin had an adequate opportunity through discovery to learn about the specific conduct addressed in the Notice.

The hearing officer found that the District's witnesses, including H.Z. and the various police officers, were more credible than Cronin and found that S.M.'s statement corroborated H.Z.'s testimony. The hearing officer also found that despite his various arrests and other legal issues, Cronin "failed to acknowledge that his conduct impacted his employment with the School District and his relationship with other teachers, parents, and students." CP at 3 (FF 9).

Based on the findings, the hearing officer determined that the District had met its burden of proving causes 1, 2, 3, and 6 in the Notice but failed to prove causes 4 and 5. The hearing officer concluded that Cronin's inappropriate touching of female students and his off-duty misconduct outlined in causes 1, 2, 3, and 6 was egregious. He also concluded that none of Cronin's misconduct is remediable. The hearing officer applied the *Hoagland* factors to the facts as found and determined that Cronin's conduct materially and substantially affected his teaching performance, efficiency, and effectiveness.

## ANALYSIS

### A. STANDARD OF REVIEW

Cronin appealed to the Spokane County Superior Court pursuant to RCW 28A.405.320, raising 55 assignments of error. The superior court affirmed the

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

hearing officer. Cronin timely appealed to this court and raises 8 assignments of error

and 6 issues. While he assigns error to two of the hearing officer's findings of facts, his

arguments to this court center primarily on the sufficiency of the Notice, evidentiary

rulings, hearing irregularities, and the hearing officer's conclusions of law.

We apply the standard of review set forth in RCW 28A.405.340. A hearing

officer's decision to uphold an adverse change in a teacher's contract may be overturned

only if the reviewing court finds the "substantial rights of the employee may have been

prejudiced" because the decision was:

> (1) In violation of constitutional provisions; or
> (2) In excess of the statutory authority or jurisdiction of the board or
> hearing officer; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the entire record as submitted and
> the public policy contained in the act of the legislature authorizing the
> decision or order; or
> (6) Arbitrary or capricious.

RCW 28A.405.340.

This court reviews a hearing officer's factual determinations under the "clearly

erroneous" standard. RCW 28A.405.340(5); *see also Clarke v. Shoreline Sch. Dist. No.*

*412*, 106 Wn.2d 102, 109-10, 720 P.2d 793 (1986) (relying on former statute); *Griffith v.*

*Seattle Sch. Dist. No. 1*, 165 Wn. App. 663, 670, 266 P.3d 932 (2011). A factual

determination is clearly erroneous if it is not supported in the record by substantial

evidence, which is evidence sufficient to persuade a fair-minded person of the finding's

29

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

truth or correctness.  *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713

(2014).  Errors of law are reviewed de novo.  RCW 28A.405.340(4); *Clarke*, 106 Wn.2d

at 109.  We give no deference to the hearing officer's application of the law to the facts

and review the conclusions of law de novo.  *Clarke*, 106 Wn.2d at 109-10.

Like the superior court sitting in its appellate capacity, our review of the hearing

officer's decision is confined to the verbatim transcript and the evidence admitted at the

hearing.  *See* RCW 28A.405.340.  This court reviews the hearing officer's findings of

fact and conclusions of law; it owes no deference to the superior court's decision.

*Griffith*, 165 Wn. App. at 671.

## B.  SUFFICIENCY OF NOTICE OF PROBABLE CAUSE

The first issue we address is whether the District's Notice was legally sufficient.

If so, we also consider whether the hearing officer relied on misconduct not alleged in the

Notice to uphold the District's termination of Cronin.

On appeal, Cronin argues that the Notice did not meet the statutory requirements

to specify the probable causes for discharge because it was vague.  Cronin claims the

hearing officer's decision regarding the sufficiency of the Notice was based on unlawful

procedure or "[a]ffected by other error of law," under RCW 28A.405.340(3), (4), and

also faults the hearing officer for allowing the District to rely on specific instances of

misconduct that were not identified in the Notice as a basis for his termination.

30

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

The District provided Cronin with a statutory notice of probable cause for

discharge and nonrenewal pursuant to RCW 28A.405.210 and RCW 28A.405.300. The

superintendent signed the Notice and referenced the ongoing investigation and Cronin's

November interview in which Rowell shared the allegations and allowed Cronin to

discuss the allegations. The Notice identified six grounds for nonrenewal and discharge.

The hearing officer found that the District proved allegations 1, 2, 3, and 6. The proven

allegations indicated:

1. You have conducted yourself in a manner unbecoming of a teacher
   employed by Central Valley School District;

2. You have engaged in a pattern of misconduct that includes several
   alcohol or substance abuse related incidents (at least one of which
   resulted in your incarceration and other which resulted in your
   inappropriate and exploitive conduct toward students and others);

3. Your pattern of behavior and the notoriety of your behavior reflects
   negatively on your ability to perform your job and has a substantial
   negative impact on your ability to do your job;

   . . . .

6. You have not been forthcoming with the District regarding behavior that
   is job-related and that substantially negatively impacts your ability to do
   your job.

Resp't's Ex. 64.

Within the Notice, the superintendent stated that based on his investigation,

including the information gathered during Cronin's interview, "I find that you have

31

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

indeed engaged in the conduct and behavior described to you in meetings and described

above." Resp't's Ex. 64. The Notice concluded by asserting:

> Based on the above, it is my conclusion that the above-referenced conduct, individually and/or in the aggregate: (1) Is unprofessional, inappropriate, flagrant, egregious, based on substantial poor judgment, and a flagrant disregard of generally recognized professional standards; (2) Lacks any positive educational aspect or legitimate professional purpose; (3) Has a material and substantial adverse affect on your ability to deal with students, parents, and other staff members; (4) Actually impairs your performance as a teacher.

Resp't's Ex. 64.

Cronin challenged the legal sufficiency of this Notice before the hearing officer,

arguing that it was statutorily deficient and vague. The hearing officer denied the motion,

noting that "[t]he statute and case law clearly contemplates that the parties will undertake

discovery" and that the prehearing discovery afforded Cronin appropriate notice to satisfy

his constitutional right to notice. CP at 292.

We first consider whether the Notice was legally sufficient. The nonrenewal

statute, RCW 28A.405.210, provides that if it is determined that there is probable cause

or causes not to renew the employment contract, the employee shall be notified, and the

notification shall specify the cause or causes for nonrenewal. Similarly, the discharge

statute, RCW 28A.405.300, provides that in the event it is determined there is probable

cause or causes to discharge a teacher, the teacher "shall be notified in writing of that

decision, which notification *shall specify the probable cause or causes for such action.*"

32

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

(Emphasis added). The statutes do not provide further guidance on what degree of specificity satisfies the notice requirement. To determine the level of specificity in the Notice, we must interpret the statute. Our review of this issue is therefore de novo. *Travelers Cas. & Sur. Co. v. Wash. Trust Bank*, 186 Wn.2d 921, 930, 383 P.3d 512 (2016).

While neither party cites any cases deciding notice sufficiency under the discharge statute, the District identifies a number of cases examining this issue in the context of the nonrenewal statute. In *Pierce v. Lake Stevens School District No. 4*, 84 Wn.2d 772, 774-75, 529 P.2d 810 (1974), a number of teachers received notice of nonrenewal under former RCW 28A.67.070 (1973) (the predecessor to RCW 28A.405.210), indicating their contracts were not being renewed due to budgetary limitations. A group of teachers appealed, arguing the notices did not meet the requirements of due process because the notices did not set forth in detail why they, rather than other teachers, were selected for nonrenewal.

On review, our Supreme Court first noted that the statutory requirements for nonrenewal satisfied the procedural requirements of due process, observing that under the doctrine set forth in *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), it is not necessary to "detail the reasons for [a teacher's] nonrenewal in the notice of termination, if these reasons are made known to him upon his request and he is given an opportunity to present evidence and dispute the propriety of the determination."

33

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Pierce*, 84 Wn.2d at 777. The court observed that the notice advised the appellants that the reason for nonrenewal was curtailment of the educational program due to insufficient funds. *Id.* at 777-78. The court also held there was no showing the appellants were prejudiced by the districts' failure to formally advise them of the criteria used to select teachers for nonrenewal where they received a trial de novo and had a full opportunity to contest the application of the criteria to them. *Id.* at 778. The court held that "[w]e do not think it was the intent of the legislature to require that the application of each element of the criteria for nonrenewal be detailed in the notice. Such a notice would clearly be impractical and unnecessary." *Id.*

In reaching this decision, *Pierce* relied on *Robel v. Highline Public Schools, District No. 401*, 65 Wn.2d 477, 479, 398 P.2d 1 (1965). In *Robel*, a notice was sent to a teacher specifying that the reason for proposed nonrenewal was "'a recommendation made by your principal to the effect that your teaching has been unsatisfactory,'" and "'that repeated conferences with you have failed to bring about the desired improvement.'" *Id.* at 479. In determining the notice was sufficient, the Supreme Court noted that it was clear that there was a series of communications, conferences, and discussions over a nine-month period between the teacher, her principal, and the personnel director about classroom planning, control and discipline, the teacher's efficiency in those areas, and parental complaints. *Robel*, 65 Wn.2d at 485. The court held that where the letters from the principal made reference to the position taken by the

34

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

principal and the teacher's lack of conformity, and the teacher admitted the reasons given

by the principal for his nonrenewal recommendation were communicated to her, "[t]he

issues in controversy were thus rather clearly drawn." *Id.* *Pierce* characterized *Robel* as

adopting a "functional approach," to the question of whether sufficient cause was stated

in the notice, looking at the information the teacher received prior to the notice. *Pierce*,

84 Wn.2d at 778-79.

Similarly, in *Carlson v. Centralia School District No. 401*, 27 Wn. App. 599, 619

P.2d 998 (1980), the court looked at whether the reasons for nonrenewal were made

known to the teacher upon his request. The teachers in that case worked at a detention

facility operated by the Department of Social and Health Services. The district

supervised the program and all the appellants were certificated employees of the district.

After the district developed fiscal issues related to the administration of the Maple Lane

School, its board of directors passed a resolution terminating the district's involvement

with the school. The district subsequently sent the appellant teachers notices stating in

part:

> "You are hereby advised and given notice that on April 19, 1978, the
> above-named . . . Directors duly made a decision that [the District] will not
> be continuing the administration of the Maple Lane school program
> following the completion of the 1977-78 school term. As a result, the
> undersigned Superintendent has determined that sufficient cause exists for
> the non-renewal of your contract for the ensuing term and terms thereafter."

*Id.* at 602 (alterations in original).

35

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

On appeal, the teachers challenged the legal sufficiency of the nonrenewal notices

under former RCW 28A.67.070 (1975). Division Two of this court held that although the

notice did not specify the economic reasons that motivated the district's decision, it did

state that the nonrenewal was based on the fact that the Maple Lane program had been

terminated and concluded "[t]his is all the statute requires." *Id.* at 605. The court further

observed:

> Despite its failure to specify the precise reasons behind the District's
> decision, the notice does refer plaintiffs to their statutory rights. A district's
> notice need not detail the reasons for a teacher's nonrenewal if these
> reasons are made known to him upon his request. *Pierce v. Lake Stevens
> School Dist.* [*No.*] *4*, [84 Wn.2d] at 782. . . .
>
> Here the plaintiffs did assert their statutory rights to a hearing and to an
> appeal to superior court. At the hearing, the reasons for the District's
> decision were made clear. Plaintiffs make no showing that they were
> prejudiced by the notice's lack of specificity. We therefore hold the notice
> of contract nonrenewal was sufficient to satisfy the requirements of
> RCW 28A.67.070.

*Id.*

Although Cronin was given notice of discharge and nonrenewal, inexplicably he

only challenges the notice of discharge on appeal. He argues that *Pierce*, *Carlson*, and

*Robel* do not apply to notices of discharge because they interpreted former versions of the

36

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

nonrenewal statute, RCW 28A.405.210.[6]  He contends that since the discharge statute

uses different language, the notification standard for discharge must be different.

We disagree and note that the difference in language is insignificant for the

purpose of notice sufficiency.  Both statutes require a determination of probable cause

before an employee can be notified of either discharge or nonrenewal.  Both statutes

require that the notice include the cause or probable cause for discharge or nonrenewal.

If the teacher requests a statutory hearing, both statutes require the hearing officer's

determination of sufficient cause to be based "solely upon the cause or causes specified in

the notice of probable cause."  RCW 28A.405.310(8).  The only difference between the

two statutes with respect to the contents of the notice is that the discharge statute

(RCW 28A.405.300) requires the notice to specify the "probable cause" for such action,

whereas the nonrenewal statute (RCW 28A.405.210) requires the notice to "specify the

cause or causes for nonrenewal of contract."

---

[6] The statutory language of the version of the nonrenewal statute former RCW 28A.67.070 in effect when *Pierce* and *Carlson* were decided provided in relevant part that the notice of nonrenewal "shall specify the cause or causes for nonrenewal of contract."  *See* LAWS OF 1970, ch. 15, § 16; *Carlson*, 27 Wn. App. at 604.  The version in effect when *Robel* was decided in 1965 differed slightly, providing in part that the notice shall specify "sufficient cause for nonrenewal of contract."  *Robel*, 65 Wn.2d at 481 (citing LAWS OF 1961, ch. 241, § 1).  In comparison, the version of the discharge statute in effect when Cronin's notice was issued in January 2012 provides in relevant part that the notice shall "specify the probable cause or causes for such action."  RCW 28A.405.300.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

The statutory language is relatively similar, and Cronin provides no analysis or authority for treating them differently.  Under both statutes, the notice serves the same function: to apprise the teacher of the District's grounds for the adverse employment action.  Thus, the functional approach that is already applied to notices of nonrenewal should also be applied to notices of discharge.  Under this approach, the notice of discharge does not need to include detailed reasons for the discharge so long as the reasons are made known to the teacher upon his request, and the teacher is "given an opportunity to present evidence and dispute the propriety of the determination."  *Pierce*, 84 Wn.2d at 777.

Cronin contends that even if the functional approach is applied to notices of discharge, *Robel*, *Pierce*, and *Carlson* are factually distinguishable.  Specifically, Cronin points out that the unsatisfactory character of Robel's teaching had been communicated to her before the notice was served and the issues had been clearly drawn.  It is certainly true that the District's Notice could have been more specific with respect to the particular instances of misconduct it believed constituted probable cause.  However, we find that the Notice complied with the statute under a functional approach.

During his employment with the District, Cronin had several meetings with Rowell to discuss and consider the allegations, including a meeting to discuss the allegations set forth in the Notice.  In light of these meetings, the issues were "clearly drawn" for Cronin, sufficient to put him on notice of the specific allegations of

38

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

misconduct referred to by the Notice. Accordingly, even though the Notice did not specify each instance of misconduct on which the six causes were based, Cronin was informed as to which specific incidences the District was relying on to support the identified causes.

However, even if we were to find that Cronin was not fully notified of the specific allegations of misconduct, he received functional due process after the Notice was issued. Cronin fails to demonstrate any prejudice from the District's failure to include more specific details in the Notice. *See Pierce*, 84 Wn.2d at 777. The specific reasons for his discharge were made known to Cronin and he had the chance to conduct prehearing discovery and respond during a de novo hearing. Like the teachers in *Pierce* and *Carlson*, Cronin received the necessary due process required by the statute's notice requirement and he makes no showing of prejudice. Under RCW 28A.405.340(3) and (4), he fails to demonstrate the hearing officer's determination that the Notice was sufficient under RCW 28A.405.300 and was based on unlawful procedure or "[a]ffected by other error of law" or that it prejudiced any of his substantial rights.

Cronin also claims that the hearing officer violated RCW 28A.405.310(8) by considering instances of misconduct that were not explicitly described in the District's Notice. If a teacher requests a hearing, the final decision by the hearing officer to nonrenew or discharge an employee "shall be based solely upon the cause or causes specified in the notice of probable cause." RCW 28A.405.310(8). Pursuant to the

39

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

statutory language, the scope of inquiry as to whether sufficient cause exists for discharge

"is defined by the causes specified by the [district]." *Woodall v. Freeman Sch. Dist.*, 136

Wn. App. 622, 631, 146 P.3d 1242 (2006) (citing *Wojt v. Chimacum Sch. Dist. No. 49*,

9 Wn. App. 857, 860, 516 P.2d 1099 (1973)). "The notice must specify the cause or

causes. It need do no more, but it must reflect a decision of probable cause, not a

judgmental conclusion that the [district's] mind is closed." *Martin v. Dayton Sch. Dist.*

*No. 2*, 85 Wn.2d 411, 412, 536 P.2d 169 (1975) (district's initial discharge notice was

legally defective because "it stated the school board's decision to terminate—as

a fait accompli—rather than a notice of probable cause for discharge as required by

RCW 28A.58.450").

As shown above, the District did not need to detail each instance of misconduct in

the Notice. Moreover, a review of the record demonstrates that the hearing officer

limited the evidence to those instances of misconduct that Rowell was aware of and relied

on when determining probable cause existed under the six identified allegations. Cronin

provides no support from the record to demonstrate that the hearing officer relied on any

instances of conduct not identified during his November 2011 meeting with Rowell.

Finally, Cronin makes a vague argument about the delay between the allegations

and the eventual hearing. He suggests that the delay violated his constitutional rights and

argues that the appropriate remedy is to set aside the action. This issue is not well

developed in the briefing, and we decline to consider it. "Parties raising constitutional

40

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

issues must present considered arguments to this court." *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *Id.* (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). Cronin cites generally to the Washington State Constitution and cases involving violation of speedy trial rights or violation of attorney-client privilege. He cites no applicable case law and provides little considered argument on this issue, and thus fails to provide sufficient argument or citation to legal authority to support this contention.

Cronin fails to demonstrate that reversal is required under RCW 28A.405.340(3) or (4) based on the hearing officer's determination that the Notice was sufficient under RCW 28A.405.300. The District could rely on those instances of misconduct Rowell was aware of and referenced in the Notice.

C. EVIDENCE OBTAINED AFTER NOTICE OF PROBABLE CAUSE

The second issue we address is whether the hearing officer committed error by considering evidence obtained by the District after the Notice was served.

After the District issued its Notice, the District continued gathering evidence and conducting discovery. At the sufficient cause hearing, the District was allowed to present evidence that it did not have when it issued the Notice. Cronin contends that this was error because the Notice must specify the causes for the adverse action, and the hearing officer's decision must be based solely on the causes set forth in the Notice. Specifically,

41

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

he contends that the District did not obtain the depositions or statements from several witnesses until after it issued the Notice and, therefore, the evidence from these witnesses should not have been admitted.

The issue raised by Cronin involves statutory interpretation. When engaged in statutory interpretation, this court's review is de novo and the goal is to discern legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The best source of legislative intent is the words used in the statute, along with context and related statutes. *State v. Barnes*, 189 Wn.2d 492, 495-96, 403 P.3d 72 (2017).

RCW 28A.405.300 requires the District to "specify" the cause or causes for discharge, and RCW 28A.405.310(8) mandates that the hearing officer's decision be based "solely upon the probable cause or causes specified in the notice." However, the plain language of the statutes does not limit the District to the evidence identified in the Notice (nor does it require the District to set forth all evidence supporting the probable cause or causes in the Notice). Cronin's argument conflates evidence of misconduct with incidents of misconduct.

Under RCW 28A.405.310(8), the District may not present or rely on a new cause or new incident that was not identified in the Notice. But Cronin does not cite any authority to support his position that the statute prohibits evidence gathered after the Notice regarding instances of misconduct included in the Notice.

42

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

In this case, the hearing officer interpreted RCW 28A.405.310 to allow evidence about the misconduct identified in the Notice but excluded evidence of misconduct that occurred after the Notice. This interpretation comports with the clear language of the statute. RCW 28A.405.310(6) explicitly provides for discovery to occur after the notice is issued and before the statutory hearing occurs. Once an employee requests a sufficient cause hearing, a hearing officer is appointed. RCW 28A.405.310(4). Within 5 days of selection, the hearing officer "shall schedule a prehearing conference to be held within such five day period, unless the board of directors and employees agree on another date convenient with the hearing officer." RCW 28A.405.310(5). At the prehearing conference, the hearing officer is authorized to issue subpoenas or subpoenas deuces tecum, authorize the taking of prehearing depositions, and provide additional methods of discovery authorized under the applicable civil rules. RCW 28A.405.310(6)(a)-(c). The hearing officer shall also establish the date for the hearing to commence, which is to occur within 10 days following the date of the prehearing conference unless the employee requests a continuance. RCW 28A.405.310(6)(d).

While Cronin is correct that the timeline for discovery is relatively short, and the statute contemplates that the District will investigate and acquire evidence prior to issuing the probable cause notice, the statute expressly provides for limited prehearing discovery. In light of this statutory provision, Cronin's proffered interpretation of RCW 28A.405.310(8) does not make sense. Under his reading of the statute, the District

43

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

could conduct discovery after issuing the Notice, but it would not be allowed to introduce evidence acquired during discovery.

The plain language of RCW 28A.405.300 and .310(8) does not require the District to gather all evidence and interview all witnesses before issuing the Notice. Nor do the statutes prohibit the District from presenting evidence obtained after issuing the Notice, so long as the evidence pertained to the misconduct known and identified in the Notice.

D. INTERPRETATION OF CR 2A SETTLEMENT AGREEMENT

The third issue we address is whether the hearing officer erred in determining that the misconduct addressed in the parties' prior CR 2A Settlement Agreement was a verity and could not be relitigated at the hearing.

In 2009, the District issued the Written Reprimand that addressed the allegations by student J.S. of inappropriate touching. The Written Reprimand summarized the allegations and directed Cronin to "(1) refrain from any physical contact with all students at all times; (2) communicate in a professional and respectful manner with all students at all times." Appellant's Ex. 7. When the Written Reprimand was issued, the District chose to deal with allegations that Cronin was intoxicated at work by supporting him in treatment. When Cronin returned to work in September, he refused to sign a return-to-work letter addressing the alcohol-related issue. Cronin later filed a grievance, claiming that the District was attempting to discipline him again for allegations that arose in the 2008-2009 school year.

44

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

To resolve these differences, the parties entered into a CR 2A Settlement Agreement in 2010. The parties agreed that the Written Reprimand would serve as discipline for both the inappropriate touching of J.S. and the allegations that Cronin was under the influence at school. The Settlement Agreement also provided that neither party would "grieve, challenge or appeal any matter or action related to Cronin's prior Letter of Reprimand, any matter or action pertaining to such prior Letter of Reprimand, or any matter or action referenced or pertaining to this Agreement." Appellant's Ex. 11.

Before the hearing, the hearing officer ruled that Cronin could not relitigate the issues covered in the Settlement Agreement and the 2009 Written Reprimand and further clarified that neither party would be allowed to introduce evidence to prove or disprove the J.S. incident and the allegations of being under the influence at school. During the hearing, the hearing officer clarified that he considered the Settlement Agreement an admission by Cronin that the misconduct occurred. In his written findings of fact, the hearing officer found:

> Based upon the Hearing Officer's October 26, 2018 Letter Decision, I accepted as a factual verity that Mr. Cronin inappropriately touched [J.S.] in the DECA store on October 17, 2008, when he rubbed her stomach. Further, I accepted as a factual verity that Mr. Cronin was under the influence of alcohol on school grounds during the 2008-2009 school year.

CP at 7 (FF 38).

45

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

The hearing officer allowed the District to present the testimony of J.S. and the allegations of being under the influence at work to demonstrate what conduct Rowell considered when determining probable cause and for possible relevance under *Hoagland*.

Cronin assigns error to the hearing officer's ruling that the misconduct outlined in the CR 2A Settlement Agreement was a verity and could not be relitigated at the hearing. He does not assign error to any of the related findings of fact. On appeal, Cronin argues that the Settlement Agreement was not an admission by Cronin that he committed the misconduct. Specifically, he notes that throughout the Settlement Agreement, the parties use the term "alleged alcohol use." Appellant's Ex. 11. Cronin continues that the ruling prejudiced him because the hearing officer concluded that "Cronin's inappropriate touching of female students . . . is egregious," and the only other student besides H.Z. was the allegation contained in the Written Reprimand. CP at 23 (Conclusion of Law (COL) 13).

Washington courts interpret settlement agreements in the same way they interpret other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188, 234 P.3d 205 (2010). "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Coop v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). The courts do not discern the parties' intent from the language of the contract alone:

> In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of

46

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

> the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

*Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (quoting *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)). If "only one reasonable inference can be drawn from the extrinsic evidence," we can determine the contract's meaning as a matter of law. *Id.* at 582.

When interpreting contracts, the courts give words their "'general and ordinary accepted meaning and connotation' unless otherwise defined by the parties or by the dictates of the context." *Blue Mountain Mem'l Gardens v. Dep't of Licensing, Cemetery Bd.*, 94 Wn. App. 38, 43, 971 P.2d 75 (1999) (quoting *Keeton v. Dep't of Soc. & Health Servs.*, 34 Wn. App. 353, 360-61, 661 P.2d 982 (1983). "Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). Therefore, the "subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Brogan & Anensen, LLC v. Lamphiear*, 165 Wn.2d 773, 776, 202 P.3d 960 (2009). "If a contract provision's meaning is uncertain or is subject to two or more reasonable interpretations after analyzing the language and considering extrinsic evidence (if appropriate), the provision is ambiguous." *Viking Bank*, 183 Wn. App. at 713. If the contract is ambiguous, we construe it against the

47

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

drafter. *Id*. If the parties drafted the contract together, the courts "adopt the interpretation that is the most reasonable and just." *Id*.

Within the Settlement Agreement, the parties agreed that the Written Reprimand would suffice as discipline for concerns related to "Cronin's misconduct with a female student" and "Cronin allegedly being under the influence of alcohol while at work." Appellant's Ex. 11. The parties dispute the effect of language within the Settlement Agreement that neither party will "grieve, challenge or appeal any matter or action related to Cronin's prior Letter of Reprimand, any matter or action pertaining to such prior Letter of Reprimand, or any matter or action referenced or pertaining to this Agreement." Appellant's Ex. 11.

We agree with the hearing officer that the Settlement Agreement's plain language precluded the parties from relitigating whether these incidents occurred. By giving up his right to "challenge" any matter pertaining to the Written Reprimand or the Settlement Agreement, Cronin was waiving his right to "dispute or call into question" these matters. BLACK'S LAW DICTIONARY 288 (11th ed. 2019). If Cronin wanted to challenge the allegations, he could have appealed the Written Reprimand or exercised his rights through the pending grievance. He gave up these rights by signing the Settlement Agreement. Cronin could also have included language in the Settlement Agreement that he was not waiving his right to challenge the allegations in the future or that he was not admitting any wrongdoing but was entering into the Settlement Agreement to resolve the

48

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

issues. But this language was not added to the Settlement Agreement. While the Settlement Agreement does not clearly state that Cronin admitted the allegations, he did agree to be disciplined for them.

Even if the hearing officer's decision was erroneous, any error was harmless. While Cronin challenges the underlying allegations, he does not challenge that he was disciplined for the allegations and that he was counseled to "refrain from any physical contact with all students at all times" and "communicate in a professional and respectful manner . . . ." Appellant's Ex. 7. The Written Reprimand also warned Cronin that a failure to follow these directives could result in additional disciplinary action. Moreover, he was warned about his off-duty alcohol-related conduct during his 2009 meetings with Rowell. The fact that Cronin was accused of this conduct and the subsequent warnings he received about future conduct are verities and could be considered in the context of Cronin's misconduct after entering into the Settlement Agreement. *See, e.g.*, *Sargent v. Selah Sch. Dist. No. 119*, 23 Wn. App. 916, 920-21, 599 P.2d 25 (1979) (considering teacher's prior discipline for similar misconduct and apparent disregard for school policy); *Simmons v. Vancouver Sch. Dist. No. 37*, 41 Wn. App. 365, 377, 704 P.2d 648 (1985) (upholding teacher discharge based, in part, on the aggregate effect of prior misconduct for which teacher was disciplined and noting teacher had the opportunity to correct issues and failed to do so); *see also McCorkle v. Sunnyside Sch. Dist. No. 201*, 69 Wn. App. 384, 391-92, 848 P.2d 1308 (1993) (hearing officer's consideration of prior

49

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

complaints against teacher that did not result in any formal discipline did not constitute an error of law).

Finally, Cronin also argues that the impact of the hearing officer's error can be seen in findings of fact 41 and 63, which found that the Settlement Agreement covered the Jan Pierce incident and the Rocket Market incident. However, Cronin did not assign error to these findings of fact, which are therefore verities on appeal. Moreover, he does not explain how these alleged errors prejudiced his substantial rights in the context of the entire record and the hearing officer's sufficient cause determination.

E. CORROBORATING H.Z.'S TESTIMONY

The fourth issue we consider is whether substantial evidence supports the hearing officer's finding of fact that the report of student S.M. corroborated the deposition testimony of H.Z.

H.Z. testified in her deposition that Cronin made inappropriate comments toward her, touched her inappropriately, and stood too close to her in a position that made her uncomfortable. She also observed that Cronin touched other female students and treated girls differently from boys by interacting with them more, touching them, and standing closer. The District presented a statement by S.M. She was a student in Cronin's accounting class but did not recall H.Z. being in the same class. S.M. recalled seeing Cronin touch other students in a nonsexual way and indicated that he "was a little bit more social with girls." Resp't's Ex. 89.

50

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Cronin assigns error to the hearing officer finding that H.Z.'s testimony was corroborated by S.M. and argues that the evidence does not support this finding. In finding of fact 80, the hearing officer found that S.M. reported that "Cronin rubbed female students' shoulders—including hers—stood close to female students, and treated female students differently than male students." CP at 14 (FF 80). Cronin assigned error to this finding but did not challenge this finding in his briefing.

Fact-based findings are reviewed under the clearly erroneous standard set forth in RCW 28A.405.340(5). A hearing officer's finding of fact should not be disturbed "unless clearly erroneous." *Clarke*, 106 Wn.2d at 110. A finding of fact is clearly erroneous if it is not supported by substantial evidence in the record, which is "evidence sufficient to persuade a fair-minded person of the finding's truth or correctness." *Riley-Hordyk v. Bethel Sch. Dist.*, 187 Wn. App. 748, 755, 350 P.3d 681 (2015).

The testimonies of H.Z. and S.M., taken together, are sufficient to persuade a fair-minded person of the truth of the hearing officer's findings that S.M.'s statement corroborates H.Z.'s testimony as to how Cronin interacted with female students and the fact that he treated the girls differently than the boys. Cronin fails to demonstrate that the hearing officer's findings on this point are clearly erroneous.

F. APPEARANCE OF FAIRNESS DOCTRINE

The fifth issue we address is whether the hearing officer violated the appearance of fairness doctrine by commenting that he would have punched Cronin.

51

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Cronin argues his hearing violated the appearance of fairness doctrine due to the comment by the hearing officer, "My oldest son is gay, so I don't appreciate the comment at all. And if [Cronin] said it in front of me he'd be sitting on his rear end with a fist in his face." RP at 776. Cronin contends that this comment destroyed any appearance of neutrality and that no reasonably prudent, disinterested observer would conclude that Cronin received a fair and impartial hearing. He also claims this constituted an error of law under RCW 28A.405.340(4).

As an initial matter, we note that Cronin did not object to the comment at the hearing. Under RAP 2.5(a), this court "may refuse to review any claim of error which was not raised in the trial court." Washington courts have generally recognized that an appearance of fairness objection is deemed waived when not raised in the trial court. *See, e.g.*, *State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998); *In re Welfare of Carpenter*, 21 Wn. App. 814, 820, 587 P.2d 588 (1978). However, even if we consider the issue, we do not find prejudice sufficient to require a new hearing.

As a certified employee, Cronin's employment could not be revoked without the procedural due process outlined in RCW 28A.405.300 and .310. An essential requirement of due process is "[a] fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). "Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing."

52

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010) (citing *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995)).

The courts presume that judicial hearings and judges are fair. *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 904, 232 P.3d 1095 (2010). "Hearing officers are not judges, but we trust and empower them to preside over proceedings, take evidence, make findings of fact, and do other duties analogous to the role of a judge. The presumption of fairness for judges likewise applies to hearing officers in attorney disciplinary proceedings." *Id.*; *see also Neravetla v. Dep't of Health*, 198 Wn. App. 647, 670, 394 P.3d 1028 (2017) (presumption is that administrative decision-makers perform their duties properly). If hearing officers do not appear to be fair, they must disqualify themselves. ELC 2.6(d)(4)(A).

Our Supreme Court has observed that generally, the appearance of fairness is not violated based on an isolated comment or incident. *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998). In *Haskell*, the attorney argued on appeal that the hearing officer violated the appearance of fairness where (1) the hearing officer questioned one of the attorney's witnesses, grilled her about "false documents," and argued with the witness, taking on the role of advocate, and (2) requested that a witness retrieve accounting records to refresh her recollection. *Id.* at 314-15. After holding the comments were not improper, our Supreme Court noted that even if the hearing officer acted improperly,

53

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

> [the actions] were isolated incidents that took place in a lengthy hearing and did not detract from the overall fairness of the proceeding. As [the Washington State Bar Association] notes, the hearing lasted nine days and it generated over 2,000 pages of transcript. Although there may be instances where a single incident or comment may be sufficient to lead a reasonably prudent person to believe a proceeding is unfair, the two incidents that have been called to our attention are not significant enough, when viewed in isolation or against the whole record, to justify a new hearing. *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 973 (1st Cir. 1991) ("Charges of bias should not be based on a few isolated comments, but rather on the record as a whole.").

*Haskell*, 136 Wn.2d at 317.

Unlike the conduct at issue in *Haskell*, the hearing officer's comment in this case was certainly improper where he injected his personal feelings, tied to his love and concern for his son, into the proceedings by stating he would have punched Cronin for making the alleged comment. However, this one comment occurred in the context of a long hearing, lasting more than 12 days and generating over 2,500 pages of transcript. The hearing officer made the improper comment in granting Cronin's objection to exclude evidence and noted that it was probably an inappropriate thing to say when making the comment. He contemporaneously commented that the case would go on too long if "every single small thing [is] introduce[d] . . . through a second or third person," apparently characterizing the allegation as a "small thing" and minimizing its significance despite his intense reaction. RP at 776. The hearing officer also subsequently allowed Cronin to deny on the record that he used the homophobic slur, even though he excluded the evidence from Shepherd. The hearing officer acknowledged

54

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

that he got "huffy" when the allegation first came up and "got a little hot on the record."

RP at 2350-51. He further acknowledged that he had regrettably used the slur in the past.

Cronin points to no other instance in the hearing or any of the hearing officer's letter

rulings where the hearing officer made an inappropriate comment or appeared biased.

Cronin argues that *Haskell* and the case it relies on, *Malave-Felix*, are

distinguishable because both of those cases involved a judicial officer acting in its usual

function. He contends that when a judicial officer makes a personal attack against a

party, such a comment destroys the appearance of a fair and impartial trial, no matter the

length of the trial. He argues this case is more akin to *State v. Lemke*, 7 Wn. App. 2d 23,

434 P.3d 551 (2018); *Fogelman v. State*, 648 So. 2d 214 (Fla. Dist. Ct. App. 1994); *State

v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (Neb. 1998); and *Mejia v. United States*, 916

A.2d 900 (D.C. 2007), all requiring reversal based on a judicial officer's improper

personal attacks on a party. However, as set forth below, each of these cases is

distinguishable from the current matter.

*Lemke* concerned a criminal defendant who was admitted to adult drug treatment

court. 7 Wn. App. 2d at 25. During several hearings, the judge made the following

comments: "'I think you're a fucking addict and maybe you need treatment. . . . You

can't even give me a clean date you're so fucked up,'" "'I'm starting to get a little bit

pissed as I think about it more and more. I'd rather you just use rather than lie to me

through masking,'" and "'So not only is he an addict, he's also a liar and thief. Done.'"

55

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Id.* at 25-26.  At a subsequent hearing, the judge refused the defendant's request for a residential drug offender sentencing alternative, stating, "'You, sir, are just a criminal, that's all you are, you're just a criminal. . . .  You, the odds say, are going to die in prison.'"  *Id.* at 27.  On appeal, Division One held that reversal was required, noting that "[n]o judge wielding the power of the State in any courtroom has any good reason to call a litigant a 'fucking addict' and 'just a criminal.'"  *Id.* at 27-28.  Unlike Cronin's hearing, *Lemke* did not concern a single, isolated statement but a series of disparaging comments attacking the defendant's character, many of which were made in the context of denying the defendant's motions or requests.

In *Fogelman*, a Florida criminal case, the reviewing court found the trial judge improperly commented on the defense expert witness in front of the jury and erred by denying the defendant's motion for disqualification based on the judge's comment to other attorneys "'to the effect that what [the defendant] did to the victim [P.L., the victim in the other case], if she were my daughter I would kill him.'"  648 So. 2d at 220 (some alterations in original).  The reviewing court first noted the comment "showed a complete absence of neutrality" and "showed a strong personal bias, which he tied to his concerns as a parent."  *Id.*  The court found that the comment, coupled with the judge's improper witness comments and conduct throughout the proceeding that appeared highly critical of the defense team, led the court to find that the judge's neutrality could be reasonably questioned.  *Id.*  Although *Fogelman* involved a similarly improper comment, the

56

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

violation of appearance of fairness was not based on that single comment. Instead, the

entire record demonstrated bias throughout the proceedings, and the comment was not

made in the context of ruling in the defendant's favor.

In *Pattno*, the male defendant appealed after pleading guilty to sexual assault of a

male child, claiming the trial judge violated the Nebraska Code of Judicial Conduct.

254 Neb. at 737. During sentencing, the trial judge noted details about the relationship

between the defendant and his victim, then read a biblical excerpt condemning

homosexuality, stated he had considered the circumstances of the case and the

"'nature . . . of the defendant,'" and found that imprisonment was necessary to protect

the public. *Id.* at 736 (alteration in original). The reviewing court held that where the

court followed up the improper introduction of the scripture with a statement that he had

considered the "'nature'" of the defendant, a reasonable person could have questioned

the judge's impartiality. *Id.* at 742. The improper comments in *Pattno* did not occur

during a lengthy proceeding during which the judge otherwise demonstrated impartiality

but instead occurred at a sentencing hearing following a guilty plea. Moreover, the

comments were not made during the course of ruling in the defendant's favor, and they

appear directly related to the judge's sentencing decision, indicating this personal bias

motivated the judge's decision.

Finally, in *Mejia*, another criminal case, the defendant was convicted of

misdemeanor sexual abuse following a bench trial during which his nine-year-old niece

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

testified that he climbed on top of her and tried to remove her clothing.  916 A.2d at 901.

During a discussion regarding when to schedule sentencing, the judge improperly stated:

> [A]nd in thinking about this as I thought about this yesterday and last night
> and thought about this this morning, . . . there are perhaps, . . . some
> cultural issues that I'm not really clear about.  I know that in countries like
> El Salvador and even, . . . in frankly places in the surrounding jurisdiction,
> there are very young girls who are 12 and 13, 14 and 15 who are married of
> black descent.  And I'm not clear whether or not there is, I don't know, and
> maybe that's something that counsel can, can help me with that there is a,
> I'm certainly not suggesting that it's cultural in general, that all people feel
> this way.  But I have not been real clear about the issue of sexualizing
> young girls at a very early age.  And whether or not any of that is
> happening and whether or not that's part and parcel of, of what was going
> on here.  I don't know when Mr. Mejia came to this country.  I don't know
> how long he had been there, what his status is.  Obviously I do appreciate
> that by virtue of this, because I heard it on the witness stand, there may be
> some immigration implications that are adverse to him and to his family.
> But I mean, you know, she is, I mean she's . . . a beautiful but little girl.  So
> I am prepared to hear it if you wish to do it now.  Otherwise, we'd need to
> just defer sentencing for a time specific, and then I can hear it then.

*Id.* at 902.

Again, unlike the current case, these comments were not made in the context of ruling in the defendant's favor and there is no information regarding the length of the hearing or whether there were other indicia of impartiality.  The hearing officer in the present matter acknowledged the improper nature of his comment and attempted to rectify it by allowing Cronin to expressly deny the conduct.  In contrast, there is no indication in the *Mejia* court that the court recognized its comments were problematic.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

This case is more akin to *Haskell*, even though the hearing officer's improper comment is much more problematic than the conduct at issue in *Haskell*. As the *Haskell* court noted, context matters when considering the appearance of fairness, and the surrounding context in this case provides many indicia of impartiality on the hearing officer's part. The isolated comment was made while ruling in Cronin's favor to exclude any evidence that he used the slur and it occurred during the course of a 12-day hearing where there are no other allegations of inappropriate conduct or bias. Although *Haskell* recognized the possibility that there may be an instance where a single comment or statement is sufficient to satisfy a reasonably prudent person to believe a proceeding is unfair, Cronin fails to demonstrate that this is that instance. The hearing officer's lone improper comment was insufficient to satisfy a reasonably prudent person that the proceeding was unfair. Moreover, to the extent Cronin claims this constituted an error of law under RCW 28A.405.340(4), Cronin makes no argument that he was prejudiced and failed to demonstrate a violation of substantial rights.

## G. NEXUS BETWEEN CONDUCT AND TEACHING PERFORMANCE

The final issue we address is whether the hearing office applied the correct standard in upholding the District's decision to terminate Cronin.

Cronin contends that the hearing officer applied the wrong standard in upholding the District's decision to terminate his employment. He contends that the hearing officer failed to consider whether his off-duty conduct affected his performance as a teacher and

59

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

incorrectly relied on notoriety to justify terminating a teacher who was a recovering

alcoholic. He also contends that the allegations of on-duty misconduct, namely the

inappropriate touching of H.Z., was too remote, uncorroborated, and insufficient to

provide cause for termination.

Since this issue addresses whether the facts as found by the hearing officer are

legally sufficient to provide cause to terminate Cronin, our review is de novo. *Griffith*,

165 Wn. App. at 670-71.

The employment contract of a nonprovisional teacher may not be terminated

except for "sufficient cause." RCW 28A.405.300; *see also* RCW 28A.405.310(8).

Sufficient cause must be established by a preponderance of the evidence. RCW

28A.405.310(8). The statute does not define what constitutes "sufficient cause."

Courts have defined the phrase differently, depending on whether the alleged misconduct

was remediable. *See Hoagland v. Mount Vernon Sch. Dist. No. 320*, 95 Wn.2d 424, 428,

623 P.2d 1156 (1981) (sufficient cause in the context of a nonremediable teaching

deficiency "to mean a showing of conduct which materially and substantially affects the

teacher's performance"); *Clarke*, 106 Wn.2d at 113 ("The term 'sufficient cause' under

RCW 28A.58.099 has been limited by court interpretation to prohibit discharge for a

'remediable teaching deficiency', unless school authorities comply with the requirements

of RCW 28A.67.065(1).").

60

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

In *Hoagland*, the Supreme Court considered whether off-duty conduct (conviction

for grand larceny by possession) was sufficient cause, as a matter of law, to support

termination. In noting that the statute does not provide per se grounds for discharge and

it would violate due process to discharge a teacher without showing actual impairment to

performance, the court held that there must be a nexus between the off-duty conduct and

the teacher's performance. *Hoagland*, 95 Wn.2d at 429-30. The court found that

teaching effectiveness is the "touchstone for all dismissals." *Id.* at 430. In order to

determine if misconduct actually impairs teaching, the court promulgated eight factors

relevant to establishing sufficient cause:

> (1) the age and maturity of the students; (2) the likelihood the teacher's
> conduct will have adversely affected students or other teachers; (3) the
> degree of the anticipated adversity; (4) the proximity or remoteness in time
> of the conduct; (5) the extenuating or aggravating circumstances
> surrounding the conduct; (6) the likelihood that the conduct may be
> repeated; (7) the motives underlying the conduct; and (8) whether the
> conduct will have a chilling effect on the rights of the teachers involved or
> of other teachers.

*Id.* at 429-30.

Five years later, in *Clarke*, the court applied the *Hoagland* factors to deficient

performance (as opposed to off-duty conduct) and clarified the appropriate standard: "the

general rule emanating from Washington case law is this: Sufficient cause for a teacher's

discharge exists as a matter of law where the teacher's deficiency is [irremediable] and

(1) materially and substantially affects the teacher's performance; *or* (2) lacks any

61

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

positive educational aspect or legitimate professional purpose." *Clarke*, 106 Wn.2d at 113-14 (internal citations omitted). Under the two-part test outlined in *Clarke*, the courts consider the *Hoagland* factors in determining the first alternative, "whether a teacher's conduct substantially undermines a teacher's effectiveness." *Fed. Way Sch. Dist. No. 210 v. Vinson*, 172 Wn.2d 756, 772, 261 P.3d 145 (2011).

In *Vinson*, the Supreme Court reaffirmed that conduct must be irremediable before either of the alternative *Clarke* findings are made. *Vinson*, 172 Wn.2d at 772. Only in the most egregious cases can sufficient cause be found without applying the *Clarke* test or *Hoagland* factors. *Id.* at 773-74.

Cronin raises several arguments to support his assertion that the hearing officer failed to apply the correct standard. As an initial matter, we note that the hearing officer concluded that Cronin's conduct was egregious. Cronin does not assign error to this conclusion. Under *Vinson*, sufficient cause may be found for discharge without application of *Clarke* and *Hoagland* where the conduct was egregious such that the sufficient cause determination may be made as a matter of law. Theoretically, Cronin's challenge to the hearing officer's analysis under *Clarke* and *Hoagland* is moot. Nevertheless, since the District does not advance this argument and the hearing officer applied the *Hoagland* factors, we will consider Cronin's challenge of the court's application of *Clarke* and *Hoagland*.

62

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Cronin argues that the hearing officer applied the wrong standard because he did not find a nexus between Cronin's conduct and a concern for student health, safety, or welfare. This argument misstates the standard. While the *Clarke* court noted that students' health, safety, and welfare is a "common thread" running through cases on teacher discipline, the court did not hold that this common thread was a requisite finding. 106 Wn.2d at 114. Instead, the requisite finding is the nexus between the teacher's conduct and performance. *See Vinson*, 172 Wn.2d at 771 (The *Hoagland* factors "were designed to ensure that if a teacher's conduct outside the profession is the basis for dismissal, the conduct has some nexus to performance of duties as a teacher.").

Cronin also contends that the District was driven to discharge him because of the negative newspapers articles and argues that bad press is not a sufficient basis to terminate a teacher. The hearing officer found the newspaper articles relevant for several reasons, including reactions to the conduct of students and teachers. Under *Hoagland*, a hearing officer should consider the likelihood that the teacher's conduct will adversely affect students or teachers. *Hoagland*, 95 Wn.2d at 429. Otherwise, the hearing officer found that the District proved four of the six charges of misconduct, each one providing sufficient cause to discharge Cronin. Cronin was not discharged for bad press.

Turning to the hearing officer's application of the *Clarke* standard, Cronin contends that his conduct was remediable, and the District failed to show that his conduct impacted his teaching effectiveness. In applying *Clarke* and *Hoagland*, the first part of

63

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

the analysis is determining whether the misconduct is remediable. "A deficient teaching

conduct, practice or method which can be characterized as 'remediable' is one that is

reasonably correctable." *Van Horn v. Highline Sch. Dist. No. 401*, 17 Wn. App. 170,

176, 562 P.2d 641 (1977) (citing *Wojt*, 9 Wn. App. at 863). Generally speaking,

remediable conduct applies to classroom teaching deficiencies instead of off-duty

conduct. *See Wojt*, 9 Wn. App. at 861-62 (inability to maintain discipline and deficient

teaching methods constitute remediable teaching deficiencies).

Here, the hearing officer did not error in concluding that Cronin's misconduct was

irremediable. Cronin proffers no argument that his off-duty conduct or inappropriate

touching of students was a deficient teaching conduct, practice, or method. As the

hearing officer noted, to the extent that Cronin's off-duty conduct was remediable, the

District complied with its obligation by granting Cronin paid leave to obtain treatment in

2009.

Nor does Cronin provide any analysis on how inappropriately touching a student is

remediable. On the contrary, Washington courts have recognized that the protection

provided by RCW 28A.405.100 against summary discharge for deficiencies in teaching

and classroom-related performance does not prevent a teacher's dismissal for conduct

such as physically abusing students or conduct that is otherwise not involved with the

professional qualities of teaching. *See Simmons*, 41 Wn. App. at 376 (inappropriate

touching of students not within the purview of teacher evaluation statute); *Potter v.*

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

*Kalama Pub. Sch. Dist. No. 402*, 31 Wn. App. 838, 842, 644 P.2d 1229 (1982) (noting that evaluation statute deals with categories such as "instructional skill; classroom management; professional preparation and scholarship; . . . handling of student discipline and attendant problems; and interest in teaching pupils and knowledge of subject matter," and that there is an "obvious distinction" between conduct involved with the professional qualities of teaching and teacher's inappropriate touching of female students).

The hearing officer did not commit error in concluding that Cronin's misconduct was irremediable.

Once misconduct is determined to be irremediable, sufficient cause to discharge a teacher exists if the conduct "(1) materially and substantially affects the teacher's performance, *or* (2) lacks any positive educational aspect or legitimate professional purpose." *Clarke*, 106 Wn.2d at 113-14 (internal citations omitted). In this case, after applying the *Hoagland* factors, the hearing officer concluded that Cronin's misconduct, both off-duty and on-campus, materially and substantially affected his teaching performance.

Cronin argues generally that the hearing officer failed to analyze how any of his off-duty conduct affected his teaching ability. But other than the remoteness argument considered below, he does not challenge the hearing officer's application of any particular *Hoagland* factor to the factual findings. As noted above, the *Hoagland* factors were specifically promulgated to ensure that courts consider how off-duty misconduct

65

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

impacts a teacher's effectiveness. *Hoagland*, 95 Wn.2d at 428-29. In other words, the hearing officer's unchallenged application of the *Hoagland* factors is sufficient to support the conclusion that Cronin's misconduct materially affected his teaching performance.

Even if we consider the hearing officer's application of the *Hoagland* factors, we conclude that he did not error in finding that Cronin's off-duty conduct materially affected his teaching performance. The hearing officer's conclusion that Cronin could not serve as a role model based on his off-duty conduct was not based solely on the fact that Cronin had a criminal conviction. The hearing officer found that Cronin had a pattern of alcohol-related arrests. Despite these arrests and other legal issues, "[he] continued to deny responsibility for his decisions and he failed to acknowledge that his conduct impacted his employment with the School District and his relationship with other teachers, parents, and students." CP at 3 (FF 9). The hearing officer also found that Cronin's illegal activities were widely publicized and that the District received complaints about Cronin's return to the classroom. Moreover, Rowell testified he felt Cronin could not serve as a role model given his behaviors, he had grave concerns about Cronin's return to the classroom, and he felt he could not trust him in the role as teacher and DECA advisor. An assistant principal at another school in the district testified that Cronin could not be trusted to make the right decisions with students based on his conduct. Two parents of former District students testified that they would not want Cronin teaching their children or grandchildren.

66

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

The facts surrounding Cronin's situation differ markedly from those present in *Hoagland.* Cronin did not have a single conviction but a series of alcohol-related arrests and subsequent convictions, and he was required to serve jail time. The arresting officers presented credible evidence that Cronin repeatedly broke the law, obstructed justice, and threatened law enforcement officers. The hearing officer found that Cronin had a pattern of denying responsibility for his decisions. Unlike *Hoagland*, Cronin's off-duty conduct generated considerable negative publicity, which turned his private conduct into a public matter that reflected poorly on the District. Cronin did not have the support of the school, parents and students, and the community. Instead, there was evidence of an adverse reaction from the community to Cronin's off-duty conduct and the prospect of his continuing in the role of a teacher in light of that conduct. Cronin's reliance on *Hoagland* to demonstrate insufficient cause fails.

Finally, even assuming the hearing officer's conclusions under the *Hoagland* factors were somehow erroneous, the conclusions pertaining to the inappropriate touching of students provide independent grounds for Cronin's discharge and nonrenewal. Cronin argues the allegations of inappropriate touching are legally insufficient because there was no allegation that Cronin tried to meet H.Z. after school, that he acted drunk, or otherwise tried to molest her. Cronin fails to cite any authority supporting his claim that these aggravating factors are necessary for sufficient cause. Inappropriately touching a student after being specifically instructed not to do so is

67

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

legally sufficient to support discharge and nonrenewal under RCW 28A.405.210 and

RCW 28A.405.300.

Cronin also contends that H.Z.'s allegations are uncorroborated but does not

challenge the finding of fact that the conduct occurred. He contends that the District was

unaware of H.Z.'s allegations when it terminated him and therefore the allegations cannot

constitute sufficient cause, but he does not challenge the hearing officer's finding to the

contrary. The District was aware of the allegations and included the misconduct as part

of its Notice. The fact that the District obtained more evidence about the allegations after

the Notice was served does not undermine the notice provided to Cronin.

The only *Hoagland* factor that Cronin specifically challenges is the proximity or

remoteness of the conduct.[7] Cronin argues that all of the alleged conduct was remote by

the time of the hearing.

The fourth factor under *Hoagland* considers the "remoteness in time of the

conduct." 95 Wn.2d at 429. Courts permit consideration of prior acts of misconduct

extending back a reasonable time when determining the existence of sufficient cause.

*Sargent*, 23 Wn. App. at 924 (sufficient cause for discharge may be evaluated in light of

the teacher's record as a whole, permitting consideration of prior acts of teacher

misconduct). However, dissimilar and remote incidents of misconduct should not be

---

[7] Cronin fails to assign error to the hearing officer's conclusion of law on this factor.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

considered. *Butler v. Lamont Sch. Dist. No. 246*, 49 Wn. App. 709, 717, 745 P.2d 1308

(1987).

When considering the proximity or remoteness of the conduct, the hearing officer

concluded:

> Several of the arrests and alcohol related behaviors occurred several years before Mr. Cronin was terminated. [J.S.'s] complaint was addressed in the Written Reprimand and it should have acted as fair warning to Mr. Cronin about his future conduct. The same can be said for the Settlement Agreement as it incorporated the Written Reprimand and discussed the issues with alcohol. Yet, Mr. Cronin continued to have alcohol related arrests and issues, including while driving, while dealing with law enforcement and in his personal relationships with women. When these events and [H.Z.'s] complaints are considered, it is clear that these events were proximal to the District's decision to issue the Notice of Probable Cause and to terminate. The above discussion supports the District's bases 1, 2, 3, and 6 for termination.

CP at 25 (COL 13D). Cronin asserts that the hearing officer erred by ignoring the

District's unlawful delay in providing the hearing. He does not cite any case law to

support his argument that remoteness relates to the hearing date rather than the date of the

probable cause notice.

In Washington, courts have generally considered the length of time between the

misconduct and the disciplinary decision to determine whether conduct is too remote to

consider as grounds for the adverse action. In *Sargent*, this court held that the teacher's

misconduct going back six years before the discharge decision could be considered where

the acts demonstrate a continuing pattern of deficiency. 23 Wn. App. at 921-24. In

69

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

contrast, in *Butler*, it was error for the trial court to consider past incidents that occurred 2 and 3 years before the discharge decision based on their dissimilarity and remoteness to the current misconduct and because there was evidence those deficiencies had been remedied. 49 Wn. App. at 717. In *Wright v. Mead School District No. 354*, 87 Wn. App. 624, 629, 944 P.2d 1 (1997), a Division Three case abrogated on other grounds by *Vinson*, 172 Wn.2d 756, the teacher engaged in sexual conduct with students when he was employed by a different school district 7 to 10 years before he received the notice of discharge. This court, relying on cases from other jurisdictions involving past sexual misconduct, held that the conduct could form a basis for sufficient cause, noting that Washington's discharge statute does not have a limitations period. 87 Wn. App. at 633.

The District suggests this court follow California's approach, expressly holding that this factor "considers when the teacher's conduct occurred in relation to the school's disciplinary decision," rather than when the conduct occurred in relation to the statutory hearing. *Crawford v. Comm'n on Prof'l Competence of Jurupa Unified Sch. Dist.*, 53 Cal. App. 5th 327, 341, 267 Cal. Rptr. 3d 520 (2020). California uses the *Morrison* factors, established in *Morrison v. State Board of Education*, 1 Cal. 3d 214, 229, 461 P.2d 375 (1969), when determining whether a teacher's conduct affects his effectiveness as a teacher, and these factors are nearly identical to the *Hoagland* factors. Indeed, the Washington Supreme Court looked to *Morrison* when adopting the *Hoagland* factors. *Hoagland*, 95 Wn.2d at 429-30. We agree and adopt the reasoning in *Crawford* and hold

70

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

that the proximity factor concerns the temporal relationship between the conduct and the disciplinary action.

Cronin further contends that even if the length of time pertains to the Notice rather than the hearing, the alleged incidents with J.S., Jan Pierce, and H.Z. were too remote where they occurred 3 years and 1.5 years, respectively, before the discharge decision. However, this argument fails under *Sargent* and *Wright*. In *Sargent*, the court held prior misconduct going back 6 years was admissible where the acts were similar and demonstrated a continuing pattern of misconduct (and the teacher was previously disciplined for the similar conduct). 23 Wn. App. at 921-24. Similarly, in *Wright*, the district could present evidence that occurred 7 to 10 years prior to the notice. 87 Wn. App. at 633. Here, where the touching misconduct occurred only 3 to 1.5 years prior to the Notice, and the incidents were part of a pattern of boundary issues, the hearing officer did not commit an error of law by considering the allegations by J.S. and H.Z.

Finally, as part of his challenge to the hearing officer's determination of sufficient cause, Cronin asserts a due process violation based on the delay between issuing the Notice and when the hearing occurred. He cites the United States and Washington constitutional prohibitions against the deprivation of life, liberty, or property without due process of law and notes that "[n]umerous other states recognize that delay in administrative proceedings that cause actual prejudice may result in a due process violation." Appellant's Br. at 45.

71

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Cronin cites no applicable Washington law in support of this argument. Moreover, there is a fatal defect in his argument where, despite acknowledging the requirement of "actual prejudice" to recover under such a claim of due process violation, he offers no argument regarding how the delay in the statutory hearing actually prejudiced him. Cronin makes no argument that evidence was lost during the delay, that any witnesses were no longer available or their recollections were unreliable due to the lapse in time, or that any witness's testimony was materially different from the facts contained in the statements, police reports, and articles in the District's possession at the time the Notice was issued.

The hearing officer's unchallenged conclusion that Cronin's conduct was egregious is legally sufficient to support sufficient cause without applying *Clarke* or the *Hoagland* factors. Even considering the *Hoagland* factors, the hearing officer did not error in concluding that Cronin's conduct was irremediable and materially affected his teaching performance, thus constituting sufficient cause to support his discharge.

H. ATTORNEY FEES ON APPEAL

Cronin requests that he be awarded back pay, costs, and attorney fees pursuant to RCW 28A.405.310(7)(c) and RCW 28A.405.350 in the event this court reverses the hearing officer's decision. Since we are affirming, we do not award attorney fees and costs.

No. 37939-6-III
*Cronin v. Central Valley Sch. Dist.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____          _____
Pennell, J.                                      Fearing, J.

73